```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
MANEIL MICHEL,                                                     :   15-CV-5730 (ARR)(MDG)
                                                                   :
                Plaintiff,                                         :   NOT FOR ELECTRONIC
                                                                   :   OR PRINT PUBLICATION
        -against-                                                  :
                                                                   :   OPINION & ORDER
PARTS AUTHORITY, INC.; MICHIGAN LOGISTICS,                         :
INC.; and NORTHEAST LOGISTICS, INC.,                               :
                                                                   :
                Defendants.                                        :
------------------------------------------------------------------ X
```

ROSS, United States District Judge:

Defendants moved to dismiss the complaint and compel arbitration. On June 15, 2016, I issued an opinion and order finding that the parties entered into an arbitration agreement, but reserving judgment on the motion to dismiss to allow the parties an opportunity to submit limited briefing on the issue of whether the cost-splitting provisions of the parties' agreement were unconscionable. See Op. & Order, Dkt. #21 ("June 15 Opinion"), at 1. On June 19, 2016, plaintiff filed a motion for leave to appeal the June 15 order pursuant to 28 U.S.C. § 1292(b), and to stay this action and any related arbitration pending the outcome of such an appeal. Pl.'s Mot. for Leave to Appeal, Dkt. #22 ("Pl.'s Mot."). On June 20, 2016, I set a briefing schedule for that motion. Order dated June 20, 2016. I now address both the motion to appeal and whether the cost-splitting provisions of the arbitration agreement are unconscionable. As set forth below, I deny the motion to appeal, stay the case, and compel arbitration.[1]

---

[1] While defendants originally filed a motion to dismiss, defendants requested a stay in their brief. Def.'s Resp. in Opp. to Mot., Dkt. #24, at 1, n.1. In Katz v. Cellco P'ship, the Second Circuit held that, upon application by any party, proceedings must be stayed where, as here, all claims are referred to arbitration. 794 F.3d 341, 345 (2d Cir. 2015), cert. denied, 136 S. Ct. 596 (2015).

## BACKGROUND[2]

Plaintiff, Maneil Michel, is a former worker for defendants Parts Authority, Inc. ("Parts Authority"), Michigan Logistics, Inc. ("Michigan"), and Northeast Logistics, Inc. ("Northeast"), companies who, among other business, were "engaged in . . . storing and distributing automobile parts and accessories." Compl., Dkt. #1 ("Compl."), ¶ 24. Michel commenced this action on October 2, 2015, principally asserting claims under the New York Labor Law, §§ 191 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., concerning wages, unpaid overtime, and retaliation.

Northeast "arrang[es] commercial transportation services on behalf of its clients in the automotive industry," including Parts Authority. Decl. of Larry Browne in Supp. of Mot. to Dismiss Pl.'s Compl. and Compel Arbitration, Dkt. #16 ("Browne Decl."), ¶¶ 3, 5. In doing so, Northeast offered "contract engagements to independent third-party transportation providers ('Owner-Operators')." Id. ¶ 3. Michel was a manual laborer for defendants; his duties included "unload[ing], pack[ing], and deliver[ing] auto parts" in New York. Compl. ¶ 28. Michel began working for defendants "around May 2010," id. ¶ 27, and on February 8, 2012, Michel entered into an Owner-Operator agreement with Northeast, see Browne Decl. Ex. A, Dkt. #16-1 ("Owner-Operator Agreement").

On November 26, 2013, Michel and Northeast agreed to an addendum to the Owner-Operator Agreement that provided that disputes arising from the parties' relationship would be submitted to arbitration. See Browne Decl. Ex. B, Dkt. #16-2 ("Arbitration Addendum"). Michel signed both the Owner-Operator Agreement and the Arbitration Addendum. Browne

---

[2] I set forth only those facts necessary to determine the limited issue of whether the cost-splitting provisions of the parties' agreement are unconscionable. A full recitation of the facts in this case are set forth in the June 15 Opinion. See June 15 Opinion at 1-3.

2

Decl. ¶ 7.

The Arbitration Addendum provides that "[e]ach party shall pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law," and that "[c]osts incidental to the arbitration" will be borne by the parties equally unless otherwise required by law or so determined by the arbitrator.  Arbitration Addendum ¶ 3(e).  However, the agreement further states that if Michel disputes these costs, he has no obligation to pay them "until, and only if, the Arbitrator determines that [Michel] is responsible for the costs."  Id.

## DISCUSSION

### A.     The Applicability of the FAA

Plaintiff first argues that the Arbitration Addendum is unconscionable "because the Federal Arbitration Act specifically excludes and does not require arbitration of plaintiff's claims."  Pl.'s Letter in Opp'n to Arbitration ("Pl.'s Letter"), Dkt. #25, at 1.  Although the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, plaintiff relies on § 1 of the FAA, which "exempts from the FAA . . . contracts of employment of transportation workers."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 (2001) (citing 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.")).

As an initial matter, this court permitted further briefing on the limited issue of whether the fee-splitting provisions in the Arbitration Addendum were unconscionable.  Plaintiff disingenuously attempts to couch his argument regarding the applicability of the FAA—one that he did not make in response to defendants' initial motion to dismiss—as one relating to

unconscionability.  I nonetheless address plaintiff's newly-raised argument, as it can be easily set aside.

Plaintiff first relies on a recent opinion in this district, Diaz v. Michigan Logistics, Inc., No. 15-cv-1415, 2016 WL 866330 (E.D.N.Y. Mar. 1, 2016), to argue that workers involved in the transportation of parts involving interstate commerce—such as Michel—are exempt from the FAA's pro-arbitration policy.  But Diaz did not make such a finding.  As in this case, the parties in Diaz disputed whether plaintiff had entered into an employment agreement with defendants, as plaintiff had alleged in his complaint, or whether instead, plaintiff was an independent contractor, as defendant claimed was evidenced by the parties' agreement.  Id. at *4.  In Diaz, the court explicitly stated that,

> As for Defendants' argument that Plaintiffs do not fall within the § 1 exemption because Plaintiffs were "independent contractors," the Court cannot say, based on the limited record presented, that Plaintiffs were not "employees" subject to a "contract of employment" within the meaning of the FAA.  Contrary to Defendants' argument, the economic reality of the parties' relationship—a highly factual question—determines employment status, not a contractual label.

Id.  Rather than entangle itself in factual questions requiring discovery, the Diaz court held that "even assuming that Plaintiffs fall within the § 1 exemption (and the FAA does not apply), Plaintiffs' claims are subject to mandatory arbitration under New York arbitration law." Id.

The same is true here.  I decline to address whether the parties entered into an employment contract or an independent contractor agreement because, in any event, the parties are compelled to arbitrate their claims.  Even assuming the FAA does not apply, New York state law governing arbitration does apply.[3]  Id. (citing, e.g., Valdes v. Swift Transp. Co., 292 F. Supp.

---

3   As I stated in the June 15 Opinion, "given that the claims were brought pursuant to [the New York Labor Law], and the Complaint alleges that the plaintiff resides in New York, Parts Authority is a New York corporation, Michigan and Northeast were authorized to do business in New York, and the bulk of the allegations center around the labor Michel performed for

4

2d 524, 527 (S.D.N.Y. 2003) (holding "that any inapplicability of the FAA would not preclude enforcing the arbitration agreement under state law")); see also O'Dean v. Tropicana Cruises Int'l, Inc., No. 98-cv-4543, 1999 WL 335381, at *1 (S.D.N.Y. May 25, 1999) ("The inapplicability of the FAA does not mean . . . that arbitration provisions in seaman's employment contracts are unenforceable, but only that the particular enforcement mechanisms of the FAA are not available."); Shanks v. Swift Transp. Co., No. L-07-55, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008) ("While the FAA does not require arbitration, the question remains whether the exemption of Section 1 operates as a form of reverse preemption, so as to prohibit arbitration of the dispute altogether. Plainly, it does not. The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs."). Because "New York arbitration law does not exempt transportation workers from arbitration," Diaz, 2016 WL 866330, at *4, Michel is compelled to arbitrate his claim regardless of the applicability of the FAA.

Plaintiff argues that New York state law cannot be an alternate ground to compel arbitration because: (1) the FAA preempts New York arbitration law; (2) federal judges do not have authority to compel arbitration pursuant to state law "where there is an equivalent federal law such as the FAA"; (3) the parties' agreement to incorporate the FAA precludes arbitration because the FAA excludes the claims of transportation workers; and (4) New York arbitration law does not favor FLSA claims. Pl.'s Letter at 3-4. These arguments all lack merit and are not supported by citations.

First, I agree with defendants that plaintiff "plays fast and loose with" the two cases upon which he relies to support his claim that the FAA has preempted New York arbitration law: Perry

---

defendants within New York, New York has the 'greatest interest in the litigation,' and New York law applies." June 15 Opinion at 15 n.7 (quoting In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992)).

5

v. Thomas, 482 U.S. 483 (1987) and AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). Defs.' Reply Letter in Supp. of Arbitration, Dkt. #26 ("Defs.' Reply Letter"), at 3. These cases do not stand for that principle. As defendants correctly state, both Perry and Concepcion "involved the preemption of state anti-arbitration rules that conflicted with the FAA policy strongly favoring the arbitral resolution of disputes." Id.; see also Perry, 482 U.S. at 491 ("This clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes."); Concepcion, 563 U.S. at 341 (the FAA preempts a California judicial rule regarding the unconscionability of class arbitration waivers). Accordingly, the FAA's preemptive effect in those cases simply does not translate to the instant case.[4]

Next, I disagree that I do not have authority to compel arbitration pursuant to state law, nor does plaintiff cite to any case that stands for such a proposition. See Pl.'s Letter at 3. Nor do I find that, as plaintiff would have it, the FAA is the only statute that governs the parties' agreement simply because the parties cited to it in that agreement. Under this reading, "if the FAA does not apply to his agreement to arbitrate, then no law applies." Defs.' Reply Letter at 4. Courts in this circuit have already considered—and rejected—such an argument. For example, in Valdes, the court held that "Section 1 [of the FAA] does not . . . in any way address the enforceability of employment contracts exempt from the FAA. It simply excludes these

---

[4] Moreover—and still assuming that the FAA is inapplicable to the instant dispute—it is unclear how the FAA could even be said to apply to the parties' agreement to arbitrate in the event that the instant contract was excluded from the FAA's provisions. A better approach is to treat "[t]he effect of the FAA's inapplicability . . . [as] 'merely . . . leav[ing] the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted.'" Valdes, 292 F. Supp. 2d at 529 (quoting Mason-Dixon Lines, Inc. v. Local Union No. 560, 443 F.2d 807, 809 (3d Cir. 1971)). Such an approach makes sense, as § 1 "does not . . . address the enforceability of employment contracts exempt from the FAA"; rather, it "simply excludes these contracts from FAA coverage entirely." Id.

contracts from FAA coverage entirely." 292 F.Supp.2d at 529. To find otherwise would "essentially re-write[] what is merely an exemption providing that the FAA does not apply into a substantive pronouncement that such clauses in transportation workers' contracts are unenforceable." Id.; see also Atwood v. Rent-A-Center East, Inc., No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016) at *3 ("[E]ven when the contract says that the Federal Arbitration Act applies and mentions no other law—if the federal act doesn't apply, the agreement to arbitrate remains viable, and the only question becomes what state's law applies to the contract to arbitrate.").

Plaintiff next argues that "New York's public policy exceptions to arbitration would prohibit arbitration of the wage claims in this action." Pl.'s Letter at 4. District courts in this circuit have rejected this argument and required arbitration of claims under the New York Labor Law. E.g., Ciago v. Ameriquest Mortgage Co., 295 F.Supp.2d 324, 334 (S.D.N.Y. 2003); Metzler v. Harris Corp., No. 00-cv-5847, 2001 WL 194911, at *2 (S.D.N.Y. Feb. 26, 2001).

I have previously held that defendants have fulfilled their obligation to make a prima facie showing that an agreement to arbitrate existed under the FAA. June 15 Order at 8. "Under New York law, an order to compel arbitration is appropriate where (1) the parties made a valid agreement to arbitrate, (2) plaintiff has not complied with the agreement, and (3) plaintiff's claim, if asserted in State court, would not be time barred." Zhang v. Wang, No. 05-cv-3888, 2006 WL 2927173, at *1 (E.D.N.Y. Oct. 12, 2006) (citing Valdes, 292 F.Supp.2d at 530). For the reasons explained in my prior order, I find that these conditions are met. See June 15 Order at 7-10.

**B.   Unconscionability**

Plaintiff fares little better in his claims that the Arbitration Addendum is unconscionable.

7

As noted above, the Addendum provides that "[e]ach party shall pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law," and that "[c]osts incidental to the arbitration" will be borne by the parties equally unless otherwise required by law or so determined by the arbitrator. Arbitration Addendum ¶ 3(e). However, the agreement further states that if Michel disputes these costs, he has no obligation to pay them "until, and only if, the Arbitrator determines that [Michel] is responsible for the costs." Id.

Michel argues that the costs of enforcing the Arbitration Addendum would "result[] in waiver of Plaintiff's FLSA-protected wages" and, because he believes these costs would exceed what he could collect in wages, would create a "de facto penalty in addition." Pl.'s Mem. in Opp'n. to Mot. to Dismiss, Dkt. #17 ("Pl.'s Mem.") at 8. Defendants argue that the Arbitration Addendum's fee provisions are not unconscionable, and that, even if they were, I am authorized to sever these provisions from the agreement, rather than invalidate the agreement as a whole. Defs.' Letter in Supp. of Arbitration, Dkt. #23.

Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988). The party resisting the contract must show "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." King v. Fox, 851 N.E.2d 1184, 1191 (N.Y. 2006) (citing Gillman, 534 N.E.2d 824). Additionally, "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). And, in New York,

8

Michel's claim "will not render an arbitration clause unenforceable if it can be severed without doing violence to the essence of the agreement." Moton v. Maplebear Inc., No. 15-cv-8879, 2016 WL 616343, at *7 (S.D.N.Y. Feb. 9, 2016).

To determine whether a party has met its burden under Green Tree, "[m]ost federal courts, including most federal and state courts in New York, have adopted a case-by-case approach requiring a showing of individualized prohibitive expense that considers factors including the financial means of plaintiff and the cost differential between arbitration and litigation in court." Valle v. ATM National, LLC, No. 14-cv-7993, 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015) (internal quotations and citation omitted). See also Brady v. Williams Capital Group, L.P., 878 N.Y.S.2d 693, 698 (N.Y. App. Div. 2009) (case-by-case approach is used in New York state courts).

Michel has made no attempt to demonstrate what fees would be reasonably imposed here, instead merely asserting that "arbitration is almost certain to result in Plaintiff paying more to the arbitrator than he can possibly collect in wages." Pl.'s Mem. at 8.[5] Nor has he submitted any

---

[5] At this stage, such a showing may not be possible. It is unclear how an arbitrator would interpret the fee-splitting provision, which provides the arbitrator discretion in allocating costs. Arbitration Addendum ¶ 3(e). Further, plaintiff notes a potential dispute regarding which set of AAA rules would apply to this dispute. Pl.'s Letter at 5-6. The AAA rules may conflict with the fee-splitting provision in the Arbitration Addendum.

Interpretation of the Arbitration Addendum and the applicability of AAA rules are questions for the arbitrator to decide in the first instance. Baldeo v. Darden Restaurants, Inc., No. 04-cv-2185, 2005 WL 44703, at *7 (E.D.N.Y. Jan. 11, 2005) ("[District court] review is limited to the gateway issue of whether there is a valid arbitration agreement."); Ciago, 295 F.Supp.2d at 330 ("This is not to say, however, that all of the provisions to which plaintiff objects are valid. It is unclear at this point how the arbitrator will interpret the [disputed] provisions. Once this Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter entirely for the arbitrator to decide.").

9

proof as to his ability to pay or the expected costs of litigation. Green Tree requires more than plaintiff's "conclusory assertions that the costs associated with arbitration would be excessive." Gill v. World Inspection Network Int'l, Inc., No. 06-cv-3187, 2006 WL 2166821, at *6 (E.D.N.Y. Jul. 31, 2006); see also Damato v. Time Warner Cable, Inc., No. 13-cv-994, 2013 WL 3968765, at *11 (E.D.N.Y. Jul. 31, 2013) (rejecting unconscionability challenge where "plaintiffs ha[d] not provided any evidence about their financial situations" and "ha[d] not conclusively established that they will be subject to the fees" plaintiffs challenged); Valdes, 292 F.Supp.2d at 534 (denying relief where plaintiff did not "establish the likelihood that she will have to pay [AAA] fees"); Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F.Supp.2d 291, 293-94 (S.D.N.Y. 2002) (rejecting unconscionability challenge where plaintiff "made no particularized showing whatsoever").[6]

Accordingly, I find that the dispute must go to arbitration. See, e.g., Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985))).

**C.    Leave to Appeal**

Pursuant to 28 U.S.C. § 1292(b), the district court may, in its discretion, certify an issue for interlocutory appeal if it finds that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may

---

[6]    If plaintiff does arbitrate this dispute and is charged with costs, he may seek federal court review of the costs at that time. See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) ("Should [plaintiff] not prevail, he may incur liability for costs and fees. If he believes that liability is excessive or that it deprives him of his statutory remedy, he may seek judicial review.").

10

materially advance the ultimate termination of the litigation." The Second Circuit has made clear that an immediate appeal from an interlocutory order "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." Koehler v. Bank of Bermuda Limited, 101 F.3d 863, 865 (2d Cir. 1996). The party moving for interlocutory appeal bears the burden of demonstrating that the requirements of § 1292(b) are met. Murray v. UBS Sec., LLC, No. 12-cv-5914, 2014 WL 1316472, at *2 (S.D.N.Y. Apr. 1, 2014) (citing Casey v. Long Island R.R. Co., 406 F.3d 142, 146 (2d Cir. 2005)). In order for a court to find a substantial ground for dispute, "there must be substantial doubt that the district court's order was correct." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-cv-15375, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (internal quotation marks omitted).

Plaintiff seeks certification for immediate appeal of one question: "[W]hether the FLSA nullifies an arbitration clause contained in the parties['] purposed agreement." Pl.'s Mot. at 2 (internal quotations omitted). Plaintiff's brief argues that the holding in Barrentine should cover Michel's contract. As explained in my prior order, "numerous other courts" have held that "Barrentine does not extend to preclude arbitration of FLSA claims of individuals." June 15 Order at 5-6 (internal quotation marks omitted) (collecting cases). Plaintiff cites no case disagreeing with this holding or reaching a different result. Therefore, plaintiff does not meet his burden to show substantial ground for difference of opinion.

## CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED and plaintiff's motion is DENIED. The case is stayed and the parties are directed to proceed to arbitration.

SO ORDERED.

                                                                   /s/
                                            Allyne R. Ross
                                            United States District Judge

Dated:        September 26, 2016
                  Brooklyn, New York

Case 1:15-cv-05730-ARR-MDG   Document 27   Filed 09/26/16   Page 12 of 12 PageID #: 200